## IN RE JOHN MARLOW.

Argued December 3, 1907—Decided December 16, 1907.

1. The statute relating to the state reformatory authorizes the imprisonment in that institution of male prisoners between the ages of sixteen and thirty years. Where a commitment fails to show the age of the prisoner, this court, on a writ of *habeas corpus,* will presume that the trial court found the necessary fact as to the prisoner's age to warrant his commitment to the reformatory.

2. Even where one under the age of sixteen years has been committed to the reformatory, the error can be redressed only by proper proceedings in error and not by writ of *habeas corpus.*

3. The act for the management of the reformatory (*Pamph. L.* 1901, p. 231) is not unconstitutional because it provides for no sen-

tence except for the maximum term, nor because it authorizes the commissioners to discharge prisoners committed thereto before the expiration of the maximum term.

On *habeas corpus.*

Before Justices HENDRICKSON, TRENCHARD and SWAYZE.

For the petitioner, *Spencer Simpson.*

For the state, *Theodore Backes.*

The opinion of the court was delivered by

SWAYZE, J.   The petitioner is confined in the state reformatory under a sentence of the Camden Special Sessions upon a conviction for breaking and entering.   He claims his freedom upon the ground that the sentence was invalid—*first,* because at the time it was imposed he was under the age of sixteen years, and *second,* because it is indeterminate, and therefore illegal.   The commitment under which he is held is merely a copy of the sentence of the court, and does not disclose his age.   The statute authorizes the courts to sentence to the reformatory such male prisoners as they think proper, between the ages of sixteen and thirty, not known to have been previously sentenced to a state prison or penitentiary in this or any other state or country, and further enacts that the court shall not fix or limit the duration of sentence, which, however, is not to exceed the maximum term provided by law for the crime.   No minimum sentence is authorized.   It may be terminated by the managers of the reformatory upon terms and in the manner provided by the act.   *Pamph. L.* 1901, *p.* 231, §§ 7, 9, 10, 11.   By the act to establish and regulate the state home for boys (*Pamph. L.* 1900, *p.* 176) a justice of this court or a judge of the Court of Common Pleas is authorized, in case a boy under sixteen is sentenced to jail or the state prison, to commit him to the state home for boys. Neither act prevents the court from sentencing offenders of any age to the state prison.

The *Habeas Corpus* act provides that persons committed or detained by virtue of the final judgment of any competent tribunal of civil or criminal jurisdiction shall not be entitled to prosecute the writ, but this obviously applies only to valid legal judgments, and we have examined into the validity of such a judgment, and, upon finding it invalid, have discharged the prisoner. *State* v. *Gray,* 8 *Vroom* 368. In that case the invalidity was apparent in the sentence itself. In the present case the sentence on its face is in compliance with the statute, and the first reason alleged for holding it invalid depends upon a fact extraneous to the record—the age of the prisoner. In the case of a commitment to the boys' home, the age of the prisoner must necessarily be set forth, as he can only be held until he attains his majority, and so the statute prescribes. There is no such requirement in the act relating to the reformatory, and although it would be very proper for the court to set forth its finding in this respect, we find nothing to make it essential. Had such a finding appeared upon the record it could not be questioned on the application for a *habeas corpus. Ex parte Karstendick,* 93 *U. S.* 396. In the absence of such a finding on the face of the commitment, we think we must presume that the court found the facts, as to age and want of prior conviction, which were necessary to warrant the sentence to the reformatory. The United States Supreme Court has so held where a similar question arose. *Ex parte Wilson,* 114 *U. S.* 417. It is, however, conceded by the state that the defendant was under sixteen years of age when sentenced, and we are therefore confronted with the question whether we can, on *habeas corpus,* review the action of the trial court. That such a review can be had where there was a lack of jurisdiction in the trial court is not doubted. The difficult question always is to distinguish between a lack of jurisdiction to pronounce the particular judgment and a mere error in law or fact to be redressed by writ of error in the one case, and by motion (taking the place of the old writ of error *coram nobis*) in the other case. Many cases are collected in 21 *Cyc.* 298, 299. It will suffice to cite *Sennott* v. *Swan,* 146 *Mass.* 489; 16 *N. E. Rep.* 448; *In re Stalker,* 167

*Mass.* 11; 44 *N. E. Rep.* 1068; *In re Bishop,* 172 *Mass.* 35; 51 *N. E. Rep.* 191; *In re Bigelow,* 113 *U. S.* 328; *In re Belt,* 159 *Id.* 95; *In re Eckart,* 166 *Id.* 481; *Dimmick* v. *Tompkins,* 194 *Id.* 540, 552. The case of Sennott *v.* Swan is notably like the present case. In all of the cases cited errors had been committed by the trial court. In some of them the proceedings failed to comply with statutory requirements, but it was nevertheless held that the proper method of redress was by writ of error, and not by *habeas corpus,* and this for the reason that the error might be such that it could be corrected. *In re Bishop, supra.* Formerly this reason would not have been applicable in this state, but since the decision in State *v.* Gray authority has been conferred upon the courts, where a judgment is reversed upon writ of error for error in the sentence, to render such judgment as should have been rendered, or remand the case for that purpose to the court before which the conviction was had. *Pamph. L.* 1898, *p.* 916, § 144. The reason for refusing relief upon *habeas corpus* applies with the greater force where the only error in the trial court is one of fact which it was within the power of the defendant himself to have corrected, if he had so desired, by merely calling the court's attention to it. No doubt he failed to do so because at the time he preferred the reformatory to the state prison. He ought not to be permitted to allow the time for a writ of error or motion to correct the judgment to pass by and then seek his discharge on *habeas corpus.*

The second question mooted is one of great importance. The return shows on its face that the sentence was, in accordance with the act relating to the management of the reformatory, a general sentence to that institution without specifying any term. We are thus confronted with the question as to the validity of the act itself. It is assailed as invalid because it authorizes a sentence which is cruel and unusual in that it is uncertain in duration and not proportioned to the offence, and because it delegates to the board of managers of the reformatory a power properly belonging to the judiciary in that they are authorized to discharge the prisoner before the expiration of the maximum term of imprisonment allowed by

law, and, with the consent of the governor, to change the place of confinement from the reformatory to the state prison.

The objection that the term of imprisonment is not fixed is untrue in fact. The term is fixed by the statute at the maximum term, and a sentence to the reformatory is in effect a sentence by the court for that term. It is clearly within the power of the legislature to prescribe the term of imprisonment and leave no discretion to the court. Nothing is left to judicial discretion in the punishment of murder in the first degree. But in fact the act leaves the punishment entirely to the discretion of the court, for it may either sentence to the reformatory for the maximum term or to the state prison for that or a shorter term, as before the passage of the act, and if in any individual case the punishment is out of proportion to the offence, that is the result of the exercise of judicial discretion, and not of a statutory requirement. Our constitution does not, like the constitution of some of the states, require that the punishment should be proportioned to the offence, and we see no reason why the legislature may not commit the extent of the imprisonment to the courts, as it always has, and in establishing a new penal institution fix the terms upon which prisoners shall be received therein.

The objection that the statute confers judicial powers upon the board of managers fails for the same reasons. The judicial power is exercised by a sentence to the reformatory for the maximum term. The shortening of that term or the change of the place of imprisonment may well be left to the managers, or to the managers and the governor, as a matter of prison discipline. Such was undoubtedly the beneficent intent of the legislature, and we see no constitutional objection upon the ground that it interferes with the judicial power.

Nor do we think the act of 1901 interferes with the prerogative to grant pardons. A discharge from imprisonment is not the equivalent of a pardon. Even if it were, the question does not now arise since the section authorizing a discharge is clearly severable from the section fixing the term at the maximum, and if the power to discharge given to the board

of managers contravenes the constitution, the petitioner must remain in confinement until the expiration of his term.

Legislation of a similar character in some of our sister states has been uniformly sustained. *People* v. *Superintendent of Reformatory* (1894), 148 *Ill.* 413, 420; 36 *N. E. Rep.* 76; *George* v. *People* (1897), 167 *Ill.* 447; 47 *N. E. Rep.* 741, 746; *Commonwealth* v. *Brown* (1896), 167 *Mass.* 144; 45 *N. E. Rep.* 1; *Murphy* v. *Commonwealth* (1899), 172 *Mass.* 264; 52 *N. E. Rep.* 505; *Miller* v. *State* (1898), 149 *Ind.* 607; 49 *N. E. Rep.* 894.

The prisoner should be remanded.